### In re PENN CENTRAL SECURITIES LITIGATION.

**M.D.L. Docket No. 56.**

Civ. A. Nos. 70–2005, 70–2010, 70–2137, 70–2320, 70–2505, 70–2596, 70–2696, 70–2818, 70–2933, 71–265 to 71–268, 71–277, 71–278, 71–280, 71–476, 71–971.

United States District Court,
E. D. Pennsylvania.

Aug. 7, 1972.

See  also  D.C.,  347  F.Supp.  1324.

OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs, present and former shareholders of Penn Central Company, move pursuant to F.R.Civ.P. 23 for an order declaring that the eighteen above-captioned actions may be maintained as class actions. Defendants[1] cross-petition for partial summary judgment in fourteen of the actions on the grounds that (1) the proposed class includes persons who have no cause of action under the federal securities law and (2) plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs' complaints assert both derivative and direct claims against Penn Central companies, their present and former directors and officers, accounting firms, brokerage houses and others. We have previously dismissed plaintiffs as parties with respect to all derivative claims on behalf of Penn Central Co. in all cases on M.D.L. Docket No. 56 and with respect to all derivative claims on behalf of Penn Central Transportation Co. ("Transportation Co.") in thirteen actions. In Re Penn Central Securities Litigation, 335 FSupp. 1026 (E.D.Pa.1971). Therefore we will consider plaintiffs' and defendants' motions with reference only to those complaints or portions of complaints which allege direct claims by shareholders against defendants.[2]

David Berger, Gerald J. Rodos, Philadelphia, Pa., Alfred S. Julien, Stanley Nemser, New York City, for plaintiffs.

Lewis H. Van Dusen, Jr., Raymond K. Denworth, Jr., Joseph W. Swain, Jr., John S. Estey, Henry T. Reath, and Thomas Raeburn White, Jr., Philadelphia, Pa., for defendants.

Mahlon F. Perkins, Jr., Donovan, Leisure, Newton & Irvine, New York City, for defendants Rabe, Routh and Taylor.

Edwin P. Rome, Morris L. Weisberg, Norman L. Holmes, Philip C. Patterson, Blank, Rome, Klaus & Comisky, and Robert W. Blanchette, Philadelphia, Pa., for Trustees of Property of Penn Cent. Transp. Co.

---

1. Forty defendants have filed a consolidated motion and memoranda for partial summary judgment in the following thirteen actions: Civil Actions No. 70-2005, 70-2010; 70-2137, 70-2320, 70-2505, 70-2596, 70-2696, 70-2818, 70-2933, 71-265, 71-267, 71-278 and 71-280. This motion will be referred to as defendants' consolidated motion.

Three defendants, William G. Rabe, Carlos P. Routh and Daniel E. Taylor, have filed supplemental motions for partial summary judgment in the following six actions: Civil Actions No. 70-2010, 70-2505, 70-2596, 70-2818, 70-2933 and 71-277. These motions will be referred to as defendants' supplemental motions.

Plaintiff-shareholders have filed a joint memorandum in opposition to all motions by defendants (herein referred to as "plaintiffs' memorandum"). The Trustees of Penn Central Transportation Co. have also filed a memorandum in opposition to defendants' motions (herein referred to as "Trustees' memorandum").

2. Reich v. Butcher, Civil Action No. 70-2005, Nemser v. Smucker, Civil Action No. 71-266, and Finkelstein v. Bevan, Civil Action No. 71-268, are solely derivative actions and can no longer be maintained by shareholders in light of our decision In re Penn Central Securities Litigation, supra. These actions are within the exclusive control of the Trustees of Transportation Co. and the Penn Central Co.

Independent investors Protective League v. Saunders, Civil Action No. 71-971, is currently proceeding independently from

Plaintiffs' complaints basically assert the following direct claims:[3] During the period between February 1, 1968 and June 21, 1970,[4] defendants prepared and filed materials with the Securities and Exchange Commission and the New York Stock Exchange and released information to shareholders and the public concerning the financial condition and operations of Penn Central Companies[5] which were materially false and misleading. The various reports, statements, documents and press releases were intended to and did inflate the market price of Penn Central Co. stock and affect plaintiffs and the investing public in their decisions to purchase, sell and hold Penn Central Co. stock. Plaintiffs further allege that during the period between January, 1969 and May, 1970, various individual defendants who had knowledge of confidential material information concerning the deteriorating financial condition of the Penn Central companies sold substantial numbers of shares of stock without disclosing this information to the public. Finally, plaintiffs allege that during this period defendants issued certain false and misleading proxy statements which were intended to and did induce plaintiffs to vote in favor of management proposals. Defendants' actions are alleged to violate various provisions of the federal securities law including §§ 5, 11, and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C.A. §§ 77e, 77k, and 77q(a)] and §§ 9, 10 (b), 13(a), 14, and 18(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.A. §§ 78i, 78j(b), 78m (a), 78n, and 78r(a)].

Plaintiffs include individuals who purchased and/or sold Penn Central Co. stock in the open market during the period of defendants' alleged illegal acts and individuals who acquired their shares before and held them throughout this period ("holders"). Plaintiffs have proposed several definitions of the class which include holders as members. In their consolidated motion, defendants move for partial summary judgment on the ground that §§ 11(a) and 17(a) of the Securities Act and §§ 9(a) and 10(b) of the Exchange Act provide causes of action only for purchasers and sellers and therefore holders have not alleged a cause of action against defendants who are entitled to judgment as a matter of law. Defendants also maintain that § 13 (a) of the Exchange Act does not provide a private right of action and therefore no plaintiff has a cause of action under this section. Finally, in their supplemental motions, defendants contend that plaintiffs have failed to state a cause of action under § 14(a) of the Exchange Act.

the stockholders actions in M.D.L. Docket No. 56. Discovery on issues of standing raised by the complaint is currently under way. Furthermore, defendants admit to have included this action inadvertently within the scope of their summary judgment motions. We will therefore exclude this action, as well as the three solely derivative actions, from consideration with respect to the class action and summary judgment motions before us.

3. Although each complaint does not allege identical claims, they are sufficiently similar so that for purposes of setting forth the basic issues before us, we can make general reference to the common elements of the complaints. When necessary, we will refer to the specific allegations of each complaint.

4. The complaints allege different periods during which defendants allegedly issued false and misleading reports and proxy statements and engaged in other illegal acts. The majority of the complaints refer to the period from February 1, 1968 (the effective date of the merger of the New York Central Railroad Company and the Pennsylvania Railroad Company) and June 21, 1970 (the date Transportation Co. filed its petition for reorganization pursuant to the Bankruptcy Act).

5. Penn Central Companies referred to include the Pennsylvania Railroad Company, the New York Central Railroad Company, the Pennsylvania New York Central Transportation Company (the surviving corporation of the merger of the Pennsylvania and New York Central Railroads, herein referred to as "Railroad"), Penn Central Co., and Transporation Co. For the history of corporate reorganization in the Penn Central complex, see In re Penn Central Securities Litigation, *supra*.

## SUMMARY JUDGMENT MOTIONS

### I. *Purchaser-Seller Requirement of § 10(b)*

Section 10(b) and Rule 10b–5, 17 C.F.R. § 240–10b–5, make unlawful the use of manipulative and deceptive devices "in connection with the purchase or sale of any security." In Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (C.A. 2, 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the Second Circuit held that § 10(b) "was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs" and that Rule 10b–5 "extended protection only to the defrauded purchaser or seller." The developing case law on § 10(b) has not restricted the type of fraud prohibited to "practices usually associated with the sale or purchase of securities" but has expanded the Birnbaum definition to include "all fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception." A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (C.A.2, 1967); Superintendent of Insurance of State of N. Y. v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Similarly the courts have given a liberal construction to what constitutes a purchase or sale for purposes of § 10(b). For example, an exchange of shares in connection with a merger or sale of assets has been held to be "in connection with the purchase or sale," SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), Dasho v. Susquehanna Corp., 380 F.2d 262 (C.A. 7, 1967), cert. denied, sub nom. Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); the issuance by a corporation of its own shares has been held to be a "sale" to which § 10(b) applies, Hooper v. Mountain States Securities Corp., 282 F.2d 195 (C.A.5, 1960), cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961), Ruckle v. Roto American Corp., 339 F.2d 24 (C.A.2, 1964); a minority shareholder in a company which underwent a short form merger has been held to be a forced seller even though he had not accepted defendant's tender offer or surrendered his stock, Vine v. Beneficial Finance Co., 374 F.2d 627 (C.A.2, 1967), cert denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); a seller who was fraudulently induced to postpone his sale has been held to have a cause of action under § 10 (b), Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965); and § 10 (b) has been held to permit recovery for fraud in connection with contracts to purchase or sell securities even though the contracts are never consummated by actual purchases or sales, Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.1968).

The courts, however, have refused repeated requests to ignore the language of § 10(b) and discard the purchaser-seller requirement altogether. *See* Supt. of Insurance of State of N. Y. v. Bankers Life, *supra*; *contra* Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J. 1972).

> "The courts have repeatedly held that one who retains his stock cannot bring himself under the provisions of Section 10(b); he must be a defrauded [purchaser or] 'seller' to qualify." Morrow v. Schapiro, 334 F.Supp. 399, 401 (E.D.Mo.1971).

We conclude that a plaintiff seeking to recover damages [6] pursuant to § 10(b) and Rule 10b–5 must establish that under the expanded definitions of purchase, sale and fraud he has suffered injury as a result of deceptive practices

---

6. In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (C.A.2, 1967), the Second Circuit held that a plaintiff who seeks injunctive relief under § 10(b) need not be a purchaser or seller. *Accord*, Kahan v. Rosenstiel, 424 F.2d 161 (C.A.3, 1970), cert. denied sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

in connection with his purchase or sale of securities. See Simmons v. Wolfson, 428 F.2d 455 (C.A.6, 1970), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (C.A.2, 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Greenstein v. Paul, 400 F.2d 580 (C.A. 2, 1968); Edelman v. Decker, 337 F. Supp. 582 (E.D.Pa.1972).

Plaintiffs in a number of actions before us acquired stock in a Penn Central company before and held it throughout the period of the defendants' alleged illegal activity. Defendants argue that these plaintiffs ("holders") do not have a cause of action under § 10(b) or Rule 10b–5 because they are not defrauded purchasers or sellers of any security. Holders maintain that they do qualify as purchasers and sellers because they exchanged their stock during the period in question in connection with two mergers: the February 1, 1968 merger of the Pennsylvania and New York Central Railroads ("1968 merger") and the October 1, 1969 "upwards merger" which resulted in the present corporate structure of Penn Central Co. and Transportation Co. ("1969 reorganization"). See In re Penn Central Securities Litigation, supra.

The exchange of shares pursuant to a merger has been held to constitute a purchase of new securities and a sale of the surrendered securities within the meaning of § 10(b). SEC v. National Securities, Inc., supra; Mader v. Armel, 402 F.2d 158 (C.A.6, 1968), cert. denied sub nom. Young v. Mader, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969); Dasho v. Susquehanna Corp., supra; Gerstle v. Gamble-Skogmo, Inc., 332 F. Supp. 644 (E.D.N.Y.1971); Simon v. New Haven Board & Carton Co., 250 F. Supp. 297 (D.Conn.1966); H. L. Green v. Childree, 185 F.Supp. 95 (S.D.N.Y. 1960). Defendants argue that this principle does not apply to the case before us because (1) holders do not allege that defendants violated the securities law in connection with the 1968 merger and (2)

the 1969 "upwards merger" is not the type of merger to which § 10(b) applies.

### A. 1968 Merger

Defendants' motions raise the issue of what factors qualify a merger as a purchase or sale for the purpose of § 10(b). In National Securities, the SEC alleged that defendants had made various fraudulent misrepresentations in proxy materials sent to the stockholders of an insurance company ("Producers") in seeking their approval of the merger of Producers with defendants' insurance company. The Supreme Court was faced with the issue of whether the purchase and sale requirement of § 10(b) extended statutory coverage to fraud in connection with stockholders' approval of a merger. The Court concluded that it did.

" * * * The deception furthered a scheme which resulted in their losing their status as shareholders in Producers and becoming shareholders in a new company. Moreover, by voting in favor of the merger, each approving shareholder individually lost any right under Arizona law to obtain an appraisal of his stock and payment for it in cash. * * * Whatever the terms 'purchase' and 'sale' may mean in other contexts, here an alleged deception has affected individual shareholders' decisions in a way not at all unlike that involved in a typical cash sale or share exchange. The broad antifraud purposes of the statute and rule would clearly be furthered by their application to this type of situation. Therefore, we conclude that Producers' shareholders 'purchased' shares in the new company by exchanging them for their old stock." SEC v. National Securities, Inc., supra, 393 U.S. at 467, 89 S.Ct. at 572.

The Exchange Act was designed

" * * * to promote free and open public securities markets and to protect the investing public from suffering inequities in trading, including, specifically, inequities that follow from trading that has been stimulated by the publication of false or mislead-

ing corporate information releases." SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 858 (C.A.2, 1968).

In National Securities, the Supreme Court concluded that a stockholder's exchange of shares pursuant to a merger is similar in both character and consequence to a purchase or sale of securities and therefore the purpose of the Exchange Act is furthered by applying § 10(b) to this type of securities transaction. The open market concept of the Exchange Act seeks to insure that investors make decisions concerning their securities transactions on the basis of full and accurate information about corporate affairs. In every case which has held that fraud or misrepresentation in connection with a merger is actionable under § 10(b), the complaint has alleged that misrepresentations in corporate releases, particularly proxy materials, have influenced stockholders to approve the merger in question. We would, therefore, expect that claims for violations of the securities law in connection with the 1968 merger would focus on the manner in which stockholder approval was obtained.

In order for plaintiffs to state a cause of action under § 10(b) in connection with the 1968 merger, plaintiffs must allege that defendants engaged in fraudulent activities which induced plaintiffs to exchange their shares pursuant to the merger.[7] None of the complaints which are the subject of defendants' motions for summary judgment states such a claim. Only two complaints, Cook v. Penn Central, Civil Action No. 70–2505, and Robinson v. Penn Central, Civil Action No. 70–2010, allege that defendants engaged in any fraudulent activity before the merger became effective on February 1, 1968; however, neither complaint alleges that any action of defendants injured holders in connection with the 1968 merger.

The *Cook* complaint alleges that beginning in 1967 and continuing through May, 1970, defendants issued misleading statements concerning the operation of the Pennsylvania Railroad Co., the New York Central Railroad Co., and the surviving Penn Central Co. These statements induced plaintiffs Cook and Small to purchase stock in the New York Central Railroad Co. in September and October, 1967 and in the Penn Central Co. in November and December, 1968.

The complaint does allege that beginning in 1967 defendants described "the anticipated advantageous affects [sic] of the merger * * * in such a way as to be misleading." (¶ 11). However, plaintiffs do not claim that these statements caused them to approve the 1968 merger (assuming they held New York Central stock when the stockholders voted to approve the merger) or exchange their shares pursuant thereto. Rather plaintiffs claim that they purchased stock in the open market in reliance upon the truth of defendants' statements concerning the merger and the operations of the railroad companies. Furthermore, they define the class they seek to represent as

" * * * the class of stockholders of Penn Central *who purchased stock of Penn Central in the open market,* and retained or sold such stock being mislead [sic] to their damage by the material caused to be published and disseminated as hereinafter set forth, or by the artifically [sic] inflated market prices thereof *at the time of purchase.*" *Cook* Complaint ¶ 8 (emphasis added).

Therefore, holders are not members of the class represented by plaintiffs Cook and Small, and no cause of action on their behalf or on behalf of any plaintiff

---

7. The merger was conducted pursuant to the Pennsylvania Business Corporation Law which provides dissenting shareholders with appraisal rights only if the stockholder presents a written objection to the proposed merger before the commencement of voting and does not vote in favor of the plan. 15 Pa.Stat.Ann. §§ 1515, 1908 (1968). Therefore, once a majority of stockholders approved the merger, non-dissenting stockholders lost their appraisal rights.

has been stated in connection with the 1968 merger by this complaint.

The *Robinson* complaint alleges that "since the date of the approval of the merger" (January 15, 1968 according to paragraph 8 of the complaint) defendants engaged in enumerated fraudulent actions which violate § 10(b). *See* Count II, *Robinson* Complaint. It would seem obvious that if the fraud occurred after the merger was approved, it could not in any way be causally connected with the merger. Although the *Robinson* complaint is quite lengthy and specific, it does not contain any allegation which even suggests that plaintiffs were injured by fraud in connection with the 1968 merger. We recognize that a number of plaintiffs exchanged their stock in the New York Central for stock in the company created by the 1968 merger on February 1, 1968; however, this fact does not state a cause of action under § 10(b) absent any allegation that the exchange was the product of fraud practiced by defendants.

We therefore conclude that plaintiffs who were not open market purchasers or sellers during the period of defendants' alleged illegal activity as defined in plaintiffs' complaints have failed to state a cause of action under § 10(b) and Rule 10b–5 in connection with the 1968 merger. We note that the reply memorandum in support of defendants' supplemental motion states that the 1968 merger was approved by the shareholders of the respective railroads in 1962 and again in 1966. It may well be that there is no factual or legal basis for any cause of action under § 10(b) in connection with the 1968 merger. However, we cannot so conclude on the basis of pleadings and affidavits before us.

Plaintiffs have repeatedly indicated that they intend to file a consolidated complaint, and on December 6, 1971, we specifically granted leave to plaintiffs to file such a complaint. To date the complaint has not been filed. Despite plaintiffs' delay, we believe that the complex and substantial nature of their claims require that plaintiffs be given the opportunity to assert effectively all of their possible claims. We will therefore grant defendants' motion for summary judgment as to holders with respect to § 10(b) claims in connection with the 1968 merger without prejudice to their right to amend their pleadings.

### B. *1969 Reorganization*

Defendants maintain that the 1969 reorganization which resulted in the present corporate organization was a technical change in corporate structure with no economic consequences. Therefore, defendants argue that stockholders in approving the reorganization were not required to make the type of significant investment decision which § 10(b) and Rule 10b–5 are intended to protect and the reorganization does not qualify as a purchase or sale for the purposes of the section and the rule.

Plaintiffs contend that the reorganization resulted in stockholders "owning an equity security with considerable differences in rights, restrictions and priorities, in a different entity with a different asset and earning (or loss) structure, and in connection with a represented management program of diversification." Plaintiffs' Memorandum, p. 26. Plaintiffs conclude that the stockholders were required to make the type of investment decision within the statutory coverage of § 10(b); and therefore holder-plaintiffs do have a cause of action for fraud in connection with the 1969 reorganization.

This is a question of first impression. All decisions which have dealt with the application of § 10(b) and Rule 10b–5 to mergers have involved traditional merger situations in which two active corporations combine so that there is a change in the corporate assets represented by each share of stock. In voting on such a merger, stockholders are required to make decisions regarding the merits of transactions in securities. In order to determine whether the 1969 reorganization involved a change in the nature of the corporation and the rights of the stockholders comparable to that

involved in a traditional merger or a purchase or sale, we must examine the character of the 1969 reorganization.

The reorganization plan was proposed by Railroad [8] (the surviving corporation of the 1968 merger) in order to further the company's program of diversification into non-railroad activities. On April 1, 1969, Railroad caused two new corporations to be formed under the Pennsylvania Business Corporation Law: Penn Central Holding Company ("Holding Co.") and PCT Company. Holding Co.'s directors and officers were all directors and officers of Railroad. Holding Co. was authorized under its articles of incorporation to issue 125 million shares; however, before the reorganization plan was consummated, Holding Co. had issued only three shares of common stock. These shares were purchased for one dollar ($1) each by Stuart T. Saunders, Alfred E. Perlman and David C. Bevan, all of whom were directors and/or officers of both Railroad and Holding Co. On April 10, 1969, Holding Co. purchased three shares of common stock of PCT Co. for three dollars ($3) thereby making PCT Co. a wholly-owned subsidiary of Holding Co.

The reorganization plan agreed to by the three companies and approved by the shareholders of Railroad on May 13, 1969 provided for the merger of PCT Co. into Railroad. In connection with this merger, each share of the capital stock of Railroad was exchanged for and converted into one share of the common stock of Holding Co. Railroad became the wholly-owned subsidiary of Holding Co. The outstanding stock of PCT Co. was cancelled and the separate existence of PCT Co. ended. The plan became effective on October 1, 1969, at which time Holding Co. changed its name to Penn Central Co. and Railroad changed its name to Penn Central Transportation Co.

Plaintiffs maintain that there are the following differences between the interests stockholders held in Railroad and Holding Co.: (1) Railroad stock consisted of one class (capital stock, $10 par value) while Holding Co.'s articles of incorporation provide for two classes (preferred stock, no par value, 25 million shares authorized; and common stock, no par value, 100 million shares authorized). The creation of authorized preference stock placed the common stockholders of Holding Co. in a lower priority classification to that of preferred stockholders. (2) Railroad stock had preemptive rights which Holding Co. common stock does not. (3) Railroad's capital stock account was carried at $10 per share while the common stock of Holding Co. is carried at a stated value of $1 per share. (4) Common stockholders of Holding Co. are entitled to cumulative voting in the election of directors while the stockholders of Railroad did not have this right. (5) Holding Co. has fewer classes of and a shorter term of office for directors than did Railroad.

Defendants argue that the changes cited could have been accomplished by amending the articles of incorporation of Railroad and such internal corporate action has never been considered to fall within the statutory coverage of § 10(b) or Rule 10b–5. We agree.

"To state a Rule 10b–5 claim * * *, a plaintiff must frame his complaint so that it appears with reasonable clarity therefrom either that a purchase or sale of securities by the plaintiff is the subject of the fraudulent scheme or that the inducement of such a purchase or sale is a purpose of the scheme. That the conduct complained of may be reprehensible does not require the conclusion that a federal remedy must be furnished. * * * The rights and

---

8. To avoid confusion as a result of the numerous mergers and name changes in the corporate history of Penn Central complex, we will refer to the surviving corporation of the 1968 merger as Railroad. The actual corporate name was Pennsylvania New York Transportation Co. which was later changed to Penn Central Co.

remedies provided by the Securities Exchange Act are to serve 'in addition to any and all other rights and remedies that may exist at law or in equity * * *.' Securities Exchange Act of 1934, § 28(a), 15 U.S.C. § 78 bb. If Congress had intended that the federal courts inquire into every decision affecting the management of corporations and then fashion a new federal law superseding state law on the fiduciary responsibilities of corporate directors, officers, and controlling persons, presumably so revolutionary a federal intervention into an area traditionally handled by the states would have been clearly expressed. * * * " Herpich v. Wallace, 430 F.2d 792, 808–809 (C.A. 5, 1970) [citations omitted].

"We agree that Congress by § 10(b) did not seek to regulate transactions which comprise no more than internal corporate mismanagement."

Supt. of Insurance of State of New York v. Bankers Life, *supra*, 404 U.S. at 12, 92 S.Ct. at 169.

■ All of the changes in stockholders' interests cited by plaintiffs concern matters which the Pennsylvania Business Corporation Law permits or requires to be established as corporate policy in the articles of incorporation.[9] The law also provides that the shareholders of a corporation can vote to amend or alter the articles of incorporation on all of these matters. 15 Pa.Stat. Ann. §§ 1801–1810. Although the cited changes may accompany traditional mergers, such changes in themselves are not the factors which distinguish traditional mergers, which are subject to § 10(b), from internal corporate affairs which are not. For purposes of § 10(b) and Rule 10b–5, the critical characteristic of a traditional merger is the combination of assets of two corporate structures and the resulting change in

stockholders' interests. Internal corporate changes alone cannot accomplish the same alteration in the nature of the corporate entity and the stockholders' interest.

■ Although Holding Co. had a full complement of directors and officers who were engaged in activities on behalf of the company before October 1, 1969, and an exchange of shares occurred pursuant to the reorganization, we cannot conclude that the formal characteristics of a traditional merger convert the 1969 reorganization into a merger for the purposes of § 10(b). The purpose of the reorganization was to enable Railroad to embark on a program of diversification into non-railroad activities through a holding company that would not be subject to regulation by the Interstate Commerce Commission. The reorganization was conceived and executed by Railroad through corporations created, staffed and, in effect, owned by Railroad. These corporations had no assets of their own and were created solely to effectuate a reorganization of Railroad from a single publicly owned corporation into a publicly held holding company and a wholly-owned railroad subsidiary. The result of the reorganization was that an existing corporation was restructured. There were no additions to the corporation by way of merger or acquisition, and the stockholders' interests in the corporation were materially unchanged by the reorganization. In terms of the total assets represented by each share of stock, the stockholders of Penn Central Co. were in exactly the same position after the reorganization as they were before it occurred.

■ A claim under § 10(b) and Rule 10b–5 must relate to a purchase or sale as to which plaintiffs were defrauded. We hold that the 1969 reorganization does not constitute a purchase or sale under § 10(b) or Rule 10b–5 and, there-

---

9. Classes of stock, 15 Pa.Stat.Ann. §§ 1204 (5), 1601; Preferences, 15 Pa.Stat.Ann. §§ 1204(6), 1601; Preemptive rights, 15 Pa.Stat.Ann. §§ 1204(9), 1611; Par Val-

ue determination, 15 Pa.Stat.Ann. §§ 1204 (5), 1614; Cumulative voting, 15 Pa.Stat. Ann. § 1204(9); Classes and terms of directors, 15 Pa.Stat.Ann. § 1403.

fore, plaintiffs who were not open market purchasers or sellers during the period of defendants' alleged illegal activity have not stated a cause of action under § 10(b) or Rule 10b–5. We therefore grant defendants' motion for summary judgment as to holders' § 10(b) claims in connection with the 1969 reorganization. The result of our decision concerning the 1968 merger and 1969 reorganization is that unless holders can amend their complaints to allege a cause of action in connection with the 1968 merger, they may not recover damages under § 10(b) or Rule 10b–5.[10]

II. *Implied Civil Remedy under § 13(a)*

Section 13(a) [11] of the Exchange Act requires issuers of securities registered pursuant to § 12 to file annual and current reports with the SEC. Four complaints [12] allege violations of § 13(a) by the filing of misleading reports. Plaintiffs maintain that § 13(a) affords a private right of action. Defendants move for summary judgment on the ground that § 18(a) [13] of the Exchange Act is the exclusive remedy for violation of § 13(a).

The specific liability sections of the Exchange Act, §§ 9(e), 16(b) and 18, "do not cover all the variegated activities with which [the] act is concerned." III L. Loss, Securities Regulation (2d ed. 1961) p. 1785. Courts have implied civil remedies for violations of provisions of the act on the basis of the common law tort doctrine that an injured party has the right to recover damages for injuries he sustained as a result of a violation of a legislative enactment. Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946) [§ 10(b)]; Restatement (Second) of Torts, § 286 (1965). However, when the legislature has specifically authorized or withheld the right to recover damages arising by reason of a violation of a statute, an implied right of action does not exist. Kardon v. National Gypsum Co., *supra*. See II L. Loss, Securities Regulation (2d ed. 1961) pp. 932–946. Furthermore, "[i]t is generally the rule that civil liability is implied from violation of a legislative enactment only when the injury claimed has been caused by that violation." Barnett v. Anaconda Co., 238 F.Supp. 766, 771–772 (S.D.N.Y. 1965).

10. Our ruling does not affect any claims holders may have under § 14(a) of the Exchange Act as a result of false and misleading proxy statements issued in connection with the 1969 reorganization. *See* Section III, *infra*.

11. Section 13(a) provides:
"(a) Every issuer of a security registered pursuant to section 12 of this title shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security—
(1) such information and documents (and such copies thereof) as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to section 12 * *;
(2) such annual reports (and such copies thereof), certified if required by the rules and regulations of the Commission by independent accountants, and such quarterly reports (and such copies thereof), as the Commission may prescribe. * * * "

12. C.A. 70–2010, 70–2320, 70–2596 and 70–2818.

13. Section 18(a) provides:
"(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder * * * which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false and misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. * * * "

■ The legislative history with respect to § 13(a) indicates that Congress enacted the provision to insure that investors would receive adequate periodic reports concerning the operation and financial condition of corporations.

"These provisions [concerning corporate reports] are regarded as the minimum which is requisite for the adequate protection of investors. The committee has repeatedly heard testimony illustrating the evasions, suppressions, distortions, exaggerations, and outright misrepresentations practiced by corporations with intent to cloak their operations and to present to the investing public a false or misleading appearance as to financial condition." Senate Report No. 792, 73d Cong., 2d Sess. 11 (1934).

Section 18 provides a civil remedy for damages resulting from a purchase or sale made in reliance on a misleading statement in a filed document. Plaintiffs maintain that the existence of an express cause of action on behalf of purchasers and sellers of securities does not preclude the existence of an implied civil remedy in favor of other categories of persons injured by a violation of § 13(a). We disagree.

■ Section 13 is one of a number of provisions that require the filing of applications, documents and reports. *See* §§ 12(b), 12(g), 15(b)(1), 15A(a), 16(a) and 17(a). Section 18(a) is the "catch-all" civil liability provision for all of the reporting requirements of the Exchange Act, and we conclude that it is the exclusive remedy for violation of § 13(a).

■ Where Congress has specifically authorized a remedy for violation of an act, the courts should not nullify the congressional scheme by implying a right of action on behalf of those not otherwise entitled to recover. The only persons besides purchasers and sellers claimed to have been injured in the complaints before us are holders who allegedly relied on misleading statements in reports filed pursuant to § 13(a) in deciding not to sell their stock. We do not believe that § 13(a) should be expanded to provide recovery for this type of injury. We find no support in the Exchange Act for the conclusion that Congress intended to provide a civil remedy under any section of the Act for any person other than those who are injured in buying or selling securities or in the exercise of their corporate voting rights. The broadest anti-fraud provision of the Exchange Act, § 10(b), specifically limits recovery to purchasers and sellers. Given the absence of remedies for holders in the history of the Exchange Act, we believe that in this case it is the function of Congress to evaluate the purposes of the Exchange Act and to extend its remedies to holders if such extension is considered warranted.

■ Plaintiffs cite Kroese v. Crawford, CCH Fed.Sec.L.Rep. ¶ 91,262 (S.D.N.Y.1963) and Kaminsky v. Abrams, 281 F.Supp. 501 (S.D.N.Y. 1968) as supporting a private right of action under § 13(a), and defendants cite Smith v. Murchison, 310 F.Supp. 1079 (S.D.N.Y.1970) as denying such a right. These cases serve to emphasize the relatively minor role that § 13(a) has played in securities litigation, and we are not persuaded by the conclusions reach by Kroese and Kaminsky. Given the express civil remedy for § 13(a) provided by § 18(a), we conclude that § 13(a) does not afford a private right of action, and we grant defendants' motion for summary judgment as to § 13(a) claims.

III. *Section 14(a) Claims*

■ In their supplemental motions, defendants argue that they are entitled to summary judgment in five actions [14] with respect to alleged violations of § 14(a) of the Exchange Act on the ground that the complaints fail to state a claim upon which relief can be granted. It is now settled that a private right of action

_____

14. C.A. 70–2010, 70–2596, 70–2818, 70–2933 and 71–277.

exists for violations of the proxy rules promulgated under § 14(a). J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Defendants maintain that in order to state a claim under § 14(a), stockholders must allege a causal connection between the injury suffered and the violation of the proxy rules. Defendants contend that plaintiffs have failed to allege such a causal connection in their complaints, and they further argue that the only injury actionable under § 14(a) is one resulting from a corporate transaction which was induced by a fraudulent proxy statement. Plaintiffs disagree with defendants on both points. They maintain that the complaints do allege the necessary causation under defendants' test, and they contend that any injury which is proximately caused by a violation of § 14(a) is actionable thereunder.

■■■ The Supreme Court has emphasized that the purpose of § 14 is to protect the integrity of corporate suffrage.

"The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that '[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange.' HR Rep. No. 1383, 73d Cong., 2d Sess, 13. It was intended to 'control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which * * * [had] frustrated the free exercise of the voting rights of stockholders.' Id., at 14. 'Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.' S.Rep. No. 792, 73d Cong, 2d Sess., 12." J. I. Case Co. v. Borak, supra, 377 U.S. at

431, 84 S.Ct. at 1559. See also Mills v. Electric Auto-Lite Co., supra.

Plaintiffs argue that § 14(a) affords a cause of action to a person who purchased, sold or retained stock in reliance upon false or misleading proxy statements. In Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965), the plaintiffs sought to recover under § 14 on the basis of misleading proxy statements which caused stockholders other than plaintiffs to sell stock to defendants, thereby giving defendants control of the corporation and enabling them to commit waste. The court held that the fact that misleading statements were contained in proxy statements which induced stockholders to sell stock did not establish a cause of action for the damages claimed because there was no allegation that the violation of the proxy rules affected any corporate transaction which injured plaintiffs.

"* * * The only claimed injury is said to have resulted from the circumstance that statements in the proxies caused stockholders other than plaintiffs to sell stock. The fact that the piece of paper upon which the allegedly misleading statements appeared was a proxy statement is irrelevant to the damage claimed.

* * * * * *

"In the absence of some allegation of infringement upon corporate suffrage rights or some corporate action taken as a result of such infringement, no cause of action under section 14(a) has been made out." Hoover v. Allen, supra, 241 F.Supp. at 230. See also Robbins v. Banner Industries, Inc., 285 F.Supp. 758, 762 (S.D.N.Y.1966).

In Mills, the Supreme Court faced the question of what causal relationship must be shown between a materially misleading proxy statement and the asserted wrong. The Court concluded that

"[w]here the misstatement or omission in a proxy statement has been shown to be 'material,' * * * that determination itself indubitably embodies a conclusion that the defect was

of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. This requirement that the defect have a significant *propensity* to affect the voting process is found in the express terms of Rule 14a–9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a)." Mills v. Electric Auto-Lite Co., *supra,* 396 U.S. at 384, 90 S.Ct. at 621 (emphasis in original).

■■■ Section 14 protects investors in their status as shareholders by providing a cause of action for misleading proxy statements which affect the corporate voting process. In order to state a cause of action under § 14(a), a stockholder must establish that he was damaged by an infringement of corporate suffrage rights. Therefore, a plaintiff can only establish a § 14(a) claim based on a purchase or sale of securities if the purchase or sale was the result of a corporate transaction whose approval was obtained by a misleading proxy statement, e. g., a traditional merger. *See* SEC v. National Securities, *supra.* If plaintiffs relied on a misleading proxy statement in deciding whether to purchase or sell stock independent of any corporate vote or transaction, plaintiffs' remedies lie in §§ 10(b) or 18(a).

■■■ Defendants base their supplemental motions for summary judgment as to the § 14(a) claims solely on the basis of the pleadings, and plaintiffs have not filed affidavits in opposition to the supplemental motions with respect to § 14(a) claims. Therefore, the motions are the equivalent of motions to dismiss pursuant to F.R.Civ.P. 12(b)(6). 6 J. Moore, Federal Practice ¶ 56.02[3] at 2035 (2d ed. 1971) [hereinafter cited as Moore]. The test on a motion to dismiss is whether the complaint is legally sufficient.

" \* \* \* [A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* Pleadings are to be liberally construed." 2A Moore ¶ 12.08 at 2271–2274 (emphasis in original).

Defendants maintain that the complaints fail to allege injuries which are actionable under § 14(a). We have reviewed the five complaints at issue and find that C.A. 70–2010, 70–2818, 70–2933 and 70–2596 (with respect to Count I for both plaintiffs and Count II with respect to plaintiff Nemser only) do state claims under § 14(a). We therefore deny defendants' motions for summary judgment as to § 14(a) claims in these complaints.

■■■ Count I of C.A. 71–277 alleges that deceptive proxy statements injured plaintiffs by artificially inflating the market price of Penn Central stock, thereby inducing plaintiffs to purchase or hold stock. We find that this complaint does not state a claim under § 14(a) because plaintiffs do not allege any injury to their corporate suffrage rights or any injury resulting from a corporate transaction approved on the basis of misleading proxy material. We, therefore, grant defendants' motion for summary judgment as to § 14(a) claims asserted in Count I of C.A. 71–277 without prejudice to plaintiffs' right to amend their complaint. We also find that plaintiff Baron has failed to state a claim under § 14(a) in Count II of C.A. 70–2596 because the alleged deceptive proxy material was issued and the corporate vote complained of occurred before Baron purchased Penn Central stock. We therefore grant defendants' motion for summary judgment with respect to the § 14(a) claims asserted by plaintiff Baron in Count II of C.A. 70–2596.

IV. *Purchaser-Seller Requirement of §*
*9(a) of the Exchange Act and §§*
*11(a) and 17(a) of the Secur-*
*ities Act*

Defendants have moved for summary judgment as to all claims based upon alleged violations of § 9(a) [15] of the Exchange Act and §§ 11(a) [16] and 17(a) [17] of the Securities Act in the following complaints: C.A. 70–2010 (§§ 9(a), 11(a) and 17(a)), C.A. 70–2320 (§ 11(a)), and C.A. 70–2696 (§§ 9(a) and 17(a)). Defendants maintain that each section provides a civil remedy only to purchasers or sellers of securities and that none of the cited complaints alleges that plaintiffs were purchasers or sellers.

▉ We agree that the civil liability provisions in question require that a plaintiff be a purchaser or seller in order to recover. Section 9(a): Surowitz v. Hilton Hotels Corp., 342 F.2d 596, 603 (C.A. 7, 1965), reversed on other grounds 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), Robbins v. Banner Industries, Inc., *supra,* 285 F.Supp. at 761; Section 11(a): Barnes v. Osofsky, 373 F.2d 269 (C.A. 2, 1967), Hoover v. Allen, *supra*; Section 17(a): Greater Iowa Corp. v. McLendon, 378 F.2d 783 (C.A. 8, 1967); Simmons v. Wolfson, *supra; see also* Dorfman v. First Boston Corp., 336 F.Supp. 1089 (E.D.Pa.1972). Plaintiffs have submitted affidavits and exhibits in opposition to defendants' motions for summary judgment which establish that certain

named plaintiffs were open market purchasers of Penn Central stock during the period from February 1, 1968 to June 21, 1970.[18] We, therefore, conclude that defendants' motion for summary judgment as to all claims based upon alleged violations of § 9(a) of the Exchange Act and §§ 11(a) and 17(a) of the Securities Act in C.A. 70–2010, 70–2320 and 70–2696 should be denied as to plaintiffs who were open market purchasers or sellers during the period of defendants' alleged violations of the provisions and granted as to plaintiffs who were not open market purchasers or sellers during this period.

## CLASS ACTION MOTION

F.R.Civ.P. 23(c)(4) provides

"When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

In view of our decision concerning defendants' motions for summary judgment, we will consider plaintiffs as seeking to represent the following two classes: (1) with respect to all claims asserted under §§ 9, 10(b) and 18(a) of the Exchange Act and §§ 11 and 17(a) of the Securities Act, all persons who purchased and/or sold Penn Central

---

15. Section 9(e), which provides remedies for violations of § 9(a), states that a person willfully violating § 9(a) is liable only "to any person who shall purchase or sell any security at a price which was affected by such act or transaction."

16. Section 11(a) provides in relevant part: "(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security * * * may * * * sue [certain persons specified in the section]."

17. Section 17(a) provides that it shall be unlawful to engage in fraud or misrepresentations "in the offer or sale of any securities." The language of § 17(a) was adopted by the SEC in drafting Rule 10b–5 which was promulgated under the authority of § 10(b) of the Exchange Act.

18. Plaintiffs also contend that they were purchasers because they exchanged shares pursuant to the 1968 merger and 1969 reorganization. However, as discussed in Section I, *supra,* we have rejected plaintiffs' argument on this issue in connection with § 10(b) claims and our discussion is equally applicable to the sections under review.

securities [19] in the open market between September 5, 1967 [20] and June 21, 1970, and (2) with respect to all claims asserted under § 14(a) of the Exchange Act, all stockholders of Penn Central from February 1, 1968 through June 21, 1970.

Plaintiffs seeks to maintain a class action pursuant to the requirements of F.R.Civ.P. 23(a) and (b)(3). Defendants oppose the class action motion on the grounds that plaintiffs have failed to comply with F.R.Civ.P. 23(b)(3) in that (1) common questions of law and fact do not predominate over questions affecting only individual members and (2) the class action is not superior to other available methods for the fair and efficient adjudication of the controversy. We will discuss the validity of each of these objections.

Defendants raise two related arguments in support of their position that common questions of law and fact do not predominate: (1) there are substantial individual questions of reliance on the allegedly misleading annual reports, proxy materials and statements by individual defendants and (2) plaintiffs' complaints offer no basis for a determination that all persons who purchased Penn Central shares during the period in question did so on the basis of the same or related false and misleading financial information.

■ We find no merit in defendants' arguments. First, we find that although the complaints allege that numerous misleading statements and reports were issued during the period in question, the complaints allege that defendants engaged in a common course of fraudulent conduct which was directed against all investors and that the financial statements issued were interrelated and cumulative, thus raising substantial questions which are common

to all investors. *See* Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (C.A. 9, 1964).

"* * * To be sure, we are not dealing here with a single alleged fraudulent misrepresentation or the issuance of a single document containing several alleged misrepresentations. Like standing dominoes, however, one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous statements. Such a possible close causal relationship between the various alleged misrepresentations in the Yale financial statements leads to the conclusion that members of the class are interested in 'common questions of law and fact.'" Fischer v. Kletz, 41 F.R.D. 377, 381 (S.D.N.Y.1966).

■ Second, in light of the Supreme Court's decision in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, 761 (1972), it would appear that once the materiality of a misrepresentation has been established in a § 10(b) action, "positive proof of reliance is not a prerequisite to recovery." *See also* Kohn v. American Metal Climax, Inc., 458 F.2d 255, 269 (C.A. 3, 1972); Mills v. Electric Auto-Lite Co., *supra;* VI L. Loss Securities Regulation, 3876–3880 (Supp.1969). However, we need not decide this issue at this time because even if proof of individual reliance is necessary, this action may nevertheless proceed as a class action under F.R.Civ.P. 23.

"* * * [R]eliance is an issue lurking in every 10b–5 action. * * * We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order separate trials on

19. Pennsylvania Railroad Co., New York Central Railroad Co., Pennsylvania New York Transportation Co. (Penn Central Co. herein referred to as Railroad), and Penn Central Co. (herein referred to as Holding Co.).

20. This is the earliest date alleged in plaintiffs' complaints on which a plaintiff purchased a Penn Central security in reliance on allegedly false and misleading information issued by defendants.

that particular issue, as on the questions of damages, if necessary." Green v. Wolf Corporation, 406 F.2d 291, 301 (C.A. 2, 1968), cert. den. Traster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). See also Mersay v. First Republic Corporation, 43 F.R.D. 465, 471 (S.D.N.Y.1968), Fischer v. Kletz, supra, Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y. 1966).

Defendants next maintain that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Defendants argue that plaintiffs have designated defendants without regard to their participation or nonparticipation in the alleged violations. The burden of defense of plaintiffs' actions therefore requires that the actions should not proceed as class actions unless the plaintiffs make a preliminary showing of the probability of success on the merits as to each defendant.

■ Although some courts have required such a preliminary showing as a condition precedent to the entry of an order allowing an action to proceed as a class suit, Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968), we agree with the majority of cases which conclude that an inquiry into the merits is not appropriate in passing on a class action motion or required by Rule 23.

" * * * The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." Kahan v. Rosenstiel, 424 F.2d 161, 169 (C.A. 3, 1970), cert. denied Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). See also Miller v. Mackey International, Inc., 452 F.2d 424 (C.A. 5, 1971), Mersay v. First Republic Co., supra, 43 F.R.D. at 469, Fogel v.

Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.D.N.Y.1969).

■ Furthermore, we are not aware of any decision which favors a preliminary showing of success on the merits which requires that plaintiffs establish their case as to each individual defendant. If a defendant can establish that the allegations of the complaint are not applicable to him, the court will dismiss the complaint as to him. Once a class has been determined, such a dismissal would free the defendant of any liability to all class members as to the grounds dismissed.

We conclude that plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3) and therefore the fourteen actions [21] which are properly before us on plaintiffs' class action motion can be maintained as class actions. We note that F.R.Civ.P. 23(c)(1) provides

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

We will therefore consider any motions the parties may wish to make concerning this decision, particularly in light of the fact that the class action issue was briefed and argued before our decision on the summary judgment issues was entered.

Counsel will submit proposed forms of order for effecting notice to the class as required by F.R.Civ.P. 23(c)(2).

## ORDER

And now, this 7th day of August, 1972, it is ordered as follows:

1. Defendants' motions for summary judgment be and they hereby are granted with respect to the following complaints or portions thereof:

(a) Civil Action No. 70–2010—

---

21. C.A. 70–2010, 70–2137, 70–2320, 70–2505, 70–2596, 70–2696, 70–2818, 70– 2933, 71–265, 71–267, 71–277, 71–278, 71–280, and 71–476.

(1) Count II—claims asserted under § 13(a) of the Securities Exchange Act of 1934; individual claims asserted under § 10(b) of the Securities Exchange Act of 1934 by plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970.

(2) Count VI—individual claims asserted under §§ 9(a) and 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933 by plaintiffs who were not open market purchasers or sellers of securities during the period January, 1970 through June, 1970.

(3) Count IX—claims asserted under § 13(a) of the Securities Exchange Act of 1934; individual claims asserted under § 10(b) of the Securities Exchange Act of 1934 by plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970.

(4) Count X—individual claims asserted under § 11 of the Securities Act of 1933 by plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970.

(b) Civil Action No. 70–2137—all individual claims asserted in Counts III, IV, VII, VIII, XI and XII (with respect to § 10(b) only).

(c) Civil Action No. 70–2320—

(1) Count I—claims asserted under. § 13(a) of the Securities Exchange Act of 1934; individual claims asserted under § 10(b) of the Securities Exchange Act of 1934 by plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970.

(2) Count II—individual claims asserted under § 11 of the Securities Act of 1933 by plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970.

(d) Civil Action No. 70–2596—

(1) Count I—claims asserted under § 13(a) of the Securities Exchange Act of 1934; claims of plaintiff Nemser asserted under §§ 10(b) and 18(a) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933.

(2) Count II—claims of plaintiff Nemser asserted under § 10(b) of the Securities Exchange Act of 1934; claims of plaintiff Baron asserted under § 14(a) of the Securities Exchange Act of 1934.

(e) Civil Action No. 70–2686—Count I—individual claims of plaintiffs who were not open market purchasers or sellers of securities during the period February 1, 1968 through June 21, 1970 asserted under §§ 9(a) and 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933.

(f) Civil Action No. 70–2818—claims asserted under § 13(a) of the Securities Exchange Act of 1934 in Counts I and II.

(g) Civil Action No. 70–2933—all individual claims asserted in Counts III, IV (with respect to § 10(b) only), V, VI, VII, VIII.

(h) Civil Action No. 71–265—all individual claims asserted in Counts I, III, IV, V, VI, VII.

(i) Civil Action No. 71–267—all individual claims asserted in Counts I and II.

(j) Civil Action No. 71–277—Count I—individual claims asserted under § 14(a) of the Securities Exchange Act of 1934.

2. In all other respects the motions be and they hereby are denied.

3. (a) Plaintiffs' motion for determination of a class action be and it hereby is granted in the following actions: Civil Action No. 70–2010, 70–2137, 70–2320, 70–2505, 70–2596, 70–2696, 70–2818, 70–2933, 71–265, 71–267, 71–277, 71–278, 71–280 and 71–476.

(b) Counsel shall submit a proposed form of order within twenty (20) days for effecting notice to the class as required by F.R.Civ.P. 23(c)(2).