KEERS AND COMPANY, a Partnership, Harry Langer, C. Phillip Lowe, Florence Luna, James F. McCormick, Phillip P. Platt, David N. Platt, Leonard E. Strong and Harry C. Wood, Plaintiffs,

v.

AMERICAN STEEL AND PUMP CORPORATION, a Delaware Corporation, B. S. F. Company, a Delaware Corporation, Alfred H. Howell, Victor Muscat, Robert L. Huffines, Jr. and First National City Bank, a New York Corporation, as Executor of the Estate of Ambrose W. Benkert, Deceased, Defendants.

United States District Court
S. D. New York.

Sept. 28, 1964.

Philip Handelman, New York City, for plaintiffs, Lawrence M. Powers, Robert M. Trien, Northrop & Jessop, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for American Steel and Pump Corp., Alfred H. Howell and First Nat. City Bank, Devereux Milburn, Raymond P. O'Keefe, New York City, of counsel.

Saxe, Bacon & O'Shea, New York City, for B. S. F. Co., Victor Muscat and Robert L. Huffines, Jr.

MacMAHON, District Judge.

Defendants move, pursuant to Rules 12(b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint for lack of jurisdiction over the subject matter of this action.

Plaintiffs, minority stockholders of American Steel and Pump Corporation (American), invoke federal jurisdiction under the Securities Acts of 1933 and 1934. They sue on behalf of American and all other stockholders similarly situated to recover money damages for claimed violations of the Acts.[1] Jurisdiction depends on whether the complaint alleges facts showing a violation of Rule 10b–5 of the Regulations promulgated under the Securities Exchange Act of 1934.[2]

The complaint is not a model of clarity, but, as we understand it and insofar as material here, it alleges that from 1949 to 1962 plaintiffs bought 17% of the stock of American from or through one Ambrose Benkert, now deceased, in reliance upon his oral promise that he "would not sell his controlling interest in American or take advantage of any other corporate opportunity flowing from his control unless the opportunity of sale on equally advantageous terms was concurrently made available to all other stockholders of American, and any other corporate opportunity made available to him through his control was similarly made available on a pro-rata basis." Plaintiffs admit that Benkert honestly intended to fulfill this promise at the time he made it and throughout his lifetime.

Benkert died in 1962, and his Executor (defendant First National City Bank, through its officer, defendant Howell) and widow "orally and in writing confirmed their knowledge of the decedent's intentions and obligations with respect to minority stockholders in American" and worked closely with plaintiffs on possible sales of the entire stock of American to third parties. The Executor, however, in derogation of the minorities' rights, "chilled and dissuaded several good offers" to buy the entire stock. Then, pursuant to a conspiracy with the buyer, B. S. F. Company, controlled by

---

1. Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)); Section 10 (b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b–5 thereunder (17 C.F.R. § 240.10b–5).

2. Rule 10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
   (1) To employ any device, scheme, or artifice to defraud,
   (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light or the circumstances under which they were made, not misleading, or
   (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security."

defendants Muscat and Huffines, allegedly "corporate buccaneers" out to loot American, sold only Benkert's controlling shares, at a premium of 55% over the open market price available to plaintiffs.

Defendants contend that federal jurisdiction is wanting because the complaint does not allege facts showing "fraud or deceit * * * in connection with the purchase or sale of any security," as required by Rule 10b–5. Defendants argue that Rule 10b–5 requires an actual purchase or sale of securities by plaintiffs which was induced by defendants' fraud. Plaintiffs counter that "they would have been sellers of their common stock in American, but for the acts of the defendants," and that Rule 10b–5 "requires that an aborted seller be treated the same as a consummated seller who has been defrauded."

We have found reference to only one case (unmentioned by plaintiffs) which sustained a complaint on the "aborted seller" theory, but there the court denied a motion to dismiss without opinion. McManus v. Jessup & Moore Paper Co., 5 S.E.C.Jud.Dec. 810 (E.D.Pa.1948). See Leech, Transactions in Corporate Control, 104 U.Pa.L.Rev. 725, 832 n. 276 (1956); 3 Loss, Securities Regulation 1468 (2d ed. 1961). The only other case in point clearly rejects plaintiffs' theory.

In Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), our Court of Appeals held that Rule 10b–5 extended protection only to the defrauded purchaser or seller and that plaintiffs must be actual, not aborted, sellers before their claim is cognizable under the Securities Act, notwithstanding alleged breaches of fiduciary duties by insiders in connection with the sale of their controlling stock to persons other than plaintiffs. "Aborted sellers" in this Circuit, therefore, must seek their remedies in state courts.

Plaintiffs also argue that they are entitled to sue under Rule 10b–5 as "defrauded offerees." That argument is untenable for a "defrauded offeree" is no more a seller than an "aborted seller."

Plaintiffs also claim that they are buyers within the jurisdictional requirement of Rule 10b–5, in that they bought their shares from or through Benkert, and that there was fraud in connection with that sale because, after Benkert's death, his Executor broke Benkert's promise to plaintiffs by selling Benkert's controlling shares to B. S. F. Company without obtaining equally advantageous terms for minority stockholders. The complaint, however, concedes that Benkert always intended to keep his promise and "died with honest intentions." Nevertheless, plaintiffs contend that the Executor's breach of Benkert's contract is fraud sufficiently connected with plaintiffs' purchase of their shares from Benkert to bring them within the protection of Rule 10b–5.

Fraud usually consists of a misrepresentation, concealment, or nondisclosure of a material fact, or at least misleading conduct, devices, or contrivances. One's state of mind is, of course, a fact, but here the complaint admits that Benkert did not misrepresent, conceal, fail to disclose, or otherwise mislead plaintiffs as to his intentions or state of mind when he sold securities to plaintiffs. Nonperformance of Benkert's promise by his Executor, in concert with the buyers of control, may or may not be a breach of contract or, perhaps, tortious interference with plaintiffs' contractual rights, but, whatever the wrong, it cannot be characterized as fraud by Benkert.

Where representations are promissory in nature, as here, the promisee may not recover unless there is proof that at the time the promises were made the promisor had no intention of keeping them. The lack of intention to perform is what constitutes the fraud. Solin Karen Lee Chu v. Ling Sun Chu, 18 App.Div.2d 632, 234 N.Y.S.2d 849 (1st Dept.1962), aff'd, 14 N.Y.2d 606, 198 N.E.2d 265, 248 N.Y.S.2d 888 (1964); Brick v. Cohn-Hall-Marx Co., 276 N.Y. 259, 11 N.E.2d 902, 114 A.L.R. 521 (1937); 1 Harper and James, Torts 572 (1956); 3 Restatement, Torts § 526 (1938). No fraud is alleged here for admittedly Benkert nev-

er made any misrepresentation to plaintiffs. According to the complaint, he made true representations. Surely Benkert did not defraud plaintiffs by dying. Indeed, we see nothing in the complaint, however broad we read it, that alleges facts showing "fraud or deceit upon any person, in connection with" the plaintiffs' "purchase or sale of any security," within the meaning of Rule 10b-5. The complaint, therefore, fails to allege any basis for federal jurisdiction.

Accordingly, the motion to dismiss the complaint is granted in all respects, and, there being no just reason for delay, the Clerk is directed to enter judgment dismissing the action.

So ordered.