**COMMERCE REPORTING COMPANY.
Inc. and Edward Grant, Plaintiffs,**

v.

**PURETEC, INC., Ronald Purer, Inc.,
Philip Purer, Ronald Purer, David Jordan, V T R, Inc., and Frederic H. Gould,
Defendants.**

No. 68 Civ. 1746.

United States District Court
S. D. New York.

July 31, 1968.

Donald F. X. Finn, New York City, for plaintiffs.

Herrick, Feinstein, Rossman & Mendelson, New York City, for defendants Puretec, Inc., Ronald Purer, Inc., Philip Purer, Ronald Purer, VTR, Inc. and Frederic H. Gould; Edward M. Abramson, New York City, of counsel.

MANSFIELD, District Judge.

Defendants' motion pursuant to Rule 12(b), F.R.Civ.P., to dismiss the complaint on the grounds that the Court lacks jurisdiction over the subject matter and the complaint fails to state a cause of action is granted, with leave to file an amended complaint.

The complaint contains two claims for relief, invoking federal question jurisdiction, 28 U.S.C. §§ 1331, 1337, based on § 22 of the Securities Act of 1933, § 27 of the Securities Exchange Act of 1934, and claiming implied rights under § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. See Fischman v. Raytheon Mfg. Co., 188 F. 2d 783 (2d Cir. 1951). Pendent jurisdiction is asserted as the basis of state common law claims. For purposes of defendants' motion the complaint's factual allegations must be accepted as true and the complaint may be dismissed only if it discloses lack of jurisdiction or insufficiency on its face. Arfons v. E. I. Du Pont De Nemours & Co., 261 F.2d 434 (2d Cir. 1958); 2 Moore, Federal Practice ¶ 12.08, pp. 2244–45 (2d ed. 1964). The pertinent allegations are as follows:

Plaintiff, Commerce Reporting Co., Inc. ("Commerce") is a New York corporation having its principal place of business here. Plaintiff Edward Grant ("Grant"), a New York citizen, is its principal stockholder and chief executive officer. Defendant Puretec is a "fictitious name for and is composed of" defendant Ronald Purer, Inc. ("Purer"), a California corporation doing business in New York, of which the principal stockholder and alter ego is defendant Philip Purer ("Philip"). Defendants Ronald Purer ("Ronald") and David Jordan ("Jordan") are California citizens, and defendant VTR, Inc. is a New York corporation, of which defendant Frederic H. Gould ("Gould") is principal executive officer.

The complaint alleges that after Philip and Ronald in December 1967 decided to sell all of the stock or assets of Purer, including its Puretec "business," Purer, Ronald and Philip, on January 22, 1968, entered into an agreement with plaintiffs or their assigns to sell all of Purer's capital stock and the business of Puretec for $1.58 million or equivalent in stock and appointed plaintiffs as their agent to effectuate the sale to an assignee. On January 24, 1968, plaintiffs, acting as principal and agent, agreed to assign the aforementioned purchase right to Granite Equipment Leasing Co. ("Granite") in exchange for 5,000 shares of Granite's stock. On the same date Purer, Philip and Ronald agreed to accept the Granite common stock in consideration of its acquisition of the stock of Purer, which was confirmed by the said defendants who also agreed with Granite that the acquisition would be publicly announced on February 20, 1968 at a meeting of the New York Society of Security Analysts.

It is next alleged that sometime between January 1, 1968 and March 19, 1968 the defendants Purer and Philip entered into secret negotiations with VTR, Inc. and Gould who were introduced to the said defendants by defendant Jordan, with all parties having full knowledge of plaintiffs' rights and of the aforementioned agreements, resulting in the announcement on March 19, 1968 that VTR, Inc. and Gould had agreed to acquire the capital stock of Purer and "business' of Puretec from Philip and Ronald for 250,000 shares of VTR, Inc.

By reference to allegations found in the Second Claim for Relief, it may reasonably be inferred, although it is not expressly alleged in the First Claim, that in entering into the agreement of January 22, 1968 with plaintiffs, the defendants Purer, Philip and Ronald were acting pursuant to a fraudulent scheme between them designed to promote the highest possible price for sale of the stock of Purer and business of Puretec by inducing plaintiffs to enter into the agreement without any intent on defendants' part of consummating it if they could find other purchasers, such as VTR and Gould, who would pay more for the stock than that agreed to under the contract with plaintiffs.

The Second Claim for Relief alleges that beginning on December 1, 1967 and continuing up to and including the date of the complaint the defendants combined and conspired to defraud the plaintiffs in the following way:

Philip and Ronald agreed with Jordan to independently approach and interest a number of people who might possibly agree to buy the stock of Purer, including plaintiffs, in order to obtain offers which they did not intend to accept and which they would fraudulently use to induce higher or additional offers from others; that as part of the scheme the defendants fraudulently led each possible purchaser to believe that no other negotiation was or was to be conducted in good faith; and that defendants did not intend to fulfill, or be bound by, such agreements. It is further alleged that as part of the scheme the defendants agreed to make certain fraudulent representations to prospective purchasers with respect to the business and contracts of a company called Tokyo Electric Company, Ltd.

Plaintiffs seek compensatory damages under both claims, plus punitive damages under the second.

Defendants' motion is founded almost entirely on the contention that the complaint fails to meet the dual requirements of § 10(b) and SEC Rule 10b–5 of the Exchange Act that the alleged fraud be (1) "in connection with" (2) "the sale or purchase" of any security (for full texts of § 10(b) of the Exchange Act, SEC Rule 10b–5, and § 17(a) of the Securities Act, see Appendix), since the alleged fraudulent agreement was never consummated and therefore amounted to no more than an aborted agreement to sell stock of Purer, as distinguished from a "sale or purchase."

■ Although it has been suggested that an action under § 10(b) of the Exchange Act and SEC Rule 10b–5 may not be founded upon an aborted agreement to buy or sell securities, see Keers & Co. v. American Steel & Pump Corp., 234 F.Supp. 201 (S.D.N.Y.1964), the law in this Circuit and elsewhere now appears to be established that it is unnecessary to prove a consummated, or closed, purchase or sale as condition to the institution of such a suit. Opper v. Hancock

Securities Corp., 367 F.2d 157 (2d Cir. 1966); Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965); Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D. Ill.1967); M. L. Lee & Co. v. American Cardboard and Packing Corp., 36 F.R.D. 27 (E.D.Pa.1964).

"The words 'in connection with the purchase or sale of any security' contained in Section 10(b) and in Rule 10b–5 do not require that the purchase or sale immediately follow the alleged fraud. The words have been construed more liberally in order to carry out the intent of the Act, which is designed to protect investors against fraud. Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D.N.Y.1964); New York Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y.1963); Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963)." Stockwell v. Reynolds & Co., 252 F.Supp. at 219.

■ Having in mind that since Congress' purpose in enacting § 10(b) of the Exchange Act was to protect the public by broadly prohibiting *"all* fraudulent schemes in connection with the purchase or sale of securities" the terms of the statute must be liberally construed, A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), see SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), the construction urged by the defendants would not only fly in the face of that objective, but render unnecessary the words "in connection with". Its effect would be to artificially restrict the statute to proscription of fraud "in the purchase or sale" rather than "in connection with" the purchase and sale of a security. The use of the words "in connection with" indicates that Congress intended to protect against fraud in agreements to buy or sell, as well as with respect to completed sales, provided damages could be shown. Here, for instance, the plaintiffs allege in substance that but for the defendants' fraud, their pur-

chase of the stock of Purer would have been consummated. Such is the very type of fraud intended to be outlawed by Congress. Although failure to consummate the purchase agreement might sometimes make it impossible for the plaintiff to prove damages and thus preclude invoking relief under § 10(b) of the Exchange Act, in this case the plaintiffs' simultaneous agreement to assign the Purer stock to Granite indicates the availability of an appropriate measure.

The complaint's allegation of the sale and assignment to Granite of the plaintiffs' contract with Purer provides an additional basis for invoking federal jurisdiction based on § 10(b) of the Exchange Act. Section 3(10) of the Exchange Act defines a "security" to include an investment contract, which would encompass an agreement to purchase securities. Section 3(13), in turn, defines the term "purchase" to "include any contract to buy, purchase or otherwise acquire," and § 3(14) defines the term "sale" to "include any contract to sell or otherwise dispose of".

The defendants' fraud is alleged to have been in connection with the plaintiffs' contract to sell to Granite their rights under their agreement with the defendants, which constituted a security within the meaning of the Exchange Act. Decisions of the Second Circuit cited by defendants in support of their motion are easily distinguishable and have no application to the facts alleged here. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1951), for instance, involved the conduct of corporate officers in the negotiation of mergers and corporate acquisitions alleged to have been in breach of their fiduciary duties to the plaintiffs there, who were not parties to the sale or agreement to sell. In the absence of any showing of direct dealings between the parties or their representatives, the Court appropriately held that § 10(b) did not grant federal jurisdiction over mere breaches of fiduciary duty. See Schoenbaum v. Firstbrook (2d Cir. 1968). Keers &

Co., supra, turned on the fact that the plaintiff there was unable to allege or show any fraud in connection with purchase of the securities involved. The situation here, on the other hand, is closer to that found by the Second Circuit in A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), where the Court upheld the right of a broker to institute an action under § 10(b) and Rule 10b–5 based on his allegation that the customer-defendants had ordered the securities without any intention of paying for them if the market price should decline, as it did. Similarly in the present case the gist of plaintiffs' complaint is that the defendants entered into the agreement for sale of Purer's stock to plaintiffs and its assignment to Granite without any intention of consummating or closing it if they should succeed in obtaining a better deal from somebody else, such as the defendants VTR, Inc. and Gould. Properly pleaded, such allegations would be sufficient to support a federal claim.

Although the two claims alleged in the present complaint, when read together, appear to state facts requiring this Court to assume jurisdiction under the Exchange Act, the complaint is woefully deficient as to form. For instance, the essential element of the first claim, purportedly based on § 10(b), is the allegation that at the time when the Purers confirmed the agreement of January 22, 1968 with plaintiffs and their agreement of January 24, 1968 to accept Granite shares in consideration for the issuance of the capital stock of Purer under the agreement of January 22, 1968, the defendants Purer, Philip and Ronald did not intend to fulfill these agreements if they should be successful in negotiations with others, such as VTR, Inc. and Gould for the sale of the Purer stock at a higher price or on more advantageous terms and conditions. Although such allegations are found in plaintiffs' second claim for relief (see Par. 30(c), (d) and (e)), the sole allegation with respect to the first claim for relief is the general charge in Par. 11 that the defendants

made untrue and fraudulent statements in connection with the purchase and sale of securities. Even in this age of "notice" pleading, this is too skimpy to suffice. Unless the plaintiffs allege fraudulent intent on the part of the defendants at the time of the aforementioned agreements with defendants, that the plaintiffs entered into the agreements in reliance upon such fraudulent representations and suffered damages as a result thereof, the complaint would be insufficient as a matter of law.

"Where representations are promissory in nature, as here, the promisee may not recover unless there is proof that at the time the promises were made the promisor had no intention of keeping them. The lack of intention to perform is what constitutes the fraud." Keers & Co. v. American Steel and Pump Corp., 234 F.Supp. at 203.

Since the deficiency, in view of the allegations contained in the second claim for relief, appears to be attributable to counsel's oversight rather than to his lack of belief in the existence of a factual basis, the complaint will be dismissed, with leave to serve an amended complaint within 20 days from the date hereof.

So ordered.

## APPENDIX

*Section 10(b), Securities Exchange Act of 1934*

*"Manipulative and deceptive devices*

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*  \*  \*  \*  \*  \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

*SEC Rule 10b-5*

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

*Section 17(a), Securities Act of 1933 "Fraudulent interstate transactions*

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

\*  \*  \*  \*  \*  \*

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or  \*  \*."