Julian L. OLIVER, Sr. and Julian L. Oliver, Jr.

v.

Martin V. B. BOSTETTER, Jr.

Civ. No. B–75–478.

United States District Court, D. Maryland.

Feb. 14, 1977.

Alan Richard Sachs, Baltimore, Md., for plaintiffs.

Paul N. Sameth, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiffs in this action have filed a five count complaint alleging two violations of

the federal securities acts and three claims for relief on state law grounds. The essential allegations are that the defendant fraudulently induced the plaintiffs into entering a contract for the sale of certain corporate stock by the plaintiffs to the defendant in settlement of an earlier lawsuit between the parties. Plaintiffs aver that the defendant never performed, never intended to perform, and never was financially capable of performing, his obligations under the contract.

The defendant has moved to dismiss, setting forth seven grounds for relief and, in the alternative, has moved for a more definite statement. Pursuant to Local Rule 6, this court finds a hearing unnecessary. This Memorandum and Order will treat each of the defendant's contentions in the order presented in his motion. In so doing, this court is mindful of the admonition in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that:

> a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

1. Section 17 provides in relevant part:

   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

   (1) to employ any device, scheme, or artifice to defraud, or

   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

   (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

   \*   \*   \*   \*   \*   \*

   (c) The exemptions provided in section 77c of this title shall not apply to the provisions of this section.

## I.

Count I of the complaint alleges a violation of Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q.[1] The thrust of defendant's motion to dismiss this count is that Section 17 provides relief only to defrauded *purchasers* and plaintiffs are *sellers*. Plaintiffs dispute the contention that Section 17 applies only to purchasers, but argue primarily that they are in fact purchasers. They make this argument by observing that under the terms of the contract of sale the defendant was to pay for the plaintiffs' stock with a promissory note, promissory notes being securities within the meaning of the Act. Plaintiffs are, therefore, purchasers, with respect to this "security."

### A.

There is ample authority for the proposition that promissory notes are securities within the purview of the Act. First, both the 1933 Act and the Securities Exchange Act of 1934 specifically define a security to include "any note." 15 U.S.C. §§ 77b(1) and 78c(a)(10). Although the 1934 Act definition goes on to exclude certain notes from its definition of security,[2] while the 1933

2. Section 3(a)(10), 15 U.S.C. § 78c(a)(10), provides:

   The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; *but shall not include* currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited. [Emphasis supplied].

Act contains no such exclusion from its definition,[3] the two definitions have come to be viewed by the courts as co-extensive. *See Tcherepnin v. Knight*, 389 U.S. 332, 335–36, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Despite the "any note" language the case law makes clear that not every note is a security. *E.g., CNS Enterprises, Inc. v. G & G Enterprises, Inc.*, 508 F.2d 1354 (7th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975). *Accord, Zabriskie v. Lewis*, 507 F.2d 546, 550 (10th Cir. 1974). The courts have predicated these decisions on a combination of what they consider to be the Congressional purpose in enacting the securities acts and the statutory preface to the definitional section, "unless the context otherwise requires."

The source of this line of decisions lies in lawsuits seeking to invoke federal jurisdiction over cases involving notes of all types including what the courts have characterized as notes issued in conjunction with ordinary commercial—as opposed to investment—transactions. The problem typically arises in fraud cases because fraud is easier to prove under the anti-fraud provisions of the securities acts than under the common law. Comment, *Notes as Securities under the Securities Act of 1933 and the Securities Exchange Act of 1934*, 36 Md.L.Rev. 233 (1976). Citing the Congressional purpose in enacting the acts as the protection of investors, and extrapolating therefrom, the courts have concluded that Congress did not intend to give the federal courts jurisdiction over every lawsuit involving a note. Garden-variety common law promissory notes, especially those issued by individuals in conjunction with consumer transactions are not within the purview of the acts. The

courts have generally justified this denial of federal jurisdiction by citing the prefatory "unless the context otherwise requires" language of the statute.

The courts have also adopted a test for determining whether a particular note is within the purview of the Act. This test is the commercial-investment distinction already alluded to. Most of the circuits have adopted this test, *e. g., CNS Enterprises, Inc. v. G & G Enterprises, Inc., supra* (7th Cir.); *Zabriskie v. Lewis, supra* (10th Cir.); *McClure v. First National, supra* (5th Cir.); but the Fourth Circuit seems not yet to have considered the issue. It appears likely to this court that the Fourth Circuit, if given the opportunity, would adopt the commercial-investment dichotomy of the other circuits, in all likelihood tempered by the investment contract analysis enunciated in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), and advocated by the author of Comment, *Notes as Securities*, 36 Md.L. Rev., *supra*. Therefore, the court will analyze the present situation according to the commercial-investment distinction, utilizing the analysis suggested by *United Housing*.

■ Although the courts have uniformly applied the commercial-versus-investment test, they have been less than uniform in the standards they apply to meet the test. The courts frequently start with their notion of what a commercial note is and compare the note under scrutiny with that notion. A much better approach is suggested by the Supreme Court's opinion in *United Housing Foundation v. Forman, supra*. *See* Comment, *Notes as Securities*, 36 Md.L. Rev., *supra*. This approach would examine the note *sub judice* for its *investment* aspects. If the note meets the test set forth

---

3. The 1934 Act defines certain notes out of its *definition of security*. *See* note 2 *supra*. Those notes which remain within the definition are subject to the Act (except where an individual section provides otherwise), while those defined out are not. By contrast, in the 1933 Act, all notes remain securities from a definitional point of view, although certain notes are expressly excluded from the operation of the Act by § 3(a)(3), 15 U.S.C. § 77c(a)(3). These expressly-excluded notes are expressly re-included by certain sections of the Act, however. Section 17, 15 U.S.C. § 77q(c), is among those provisions which expressly re-include securities exempted by Section 3(a) of the 1933 Act. *See* note 1 *supra*.

in *SEC v. W. J. Howey, supra*, for determining whether an investment contract is a security, then the note is a security; if it fails to meet the *Howey* test, it is not a security within the purview of the 1933 and 1934 Acts, and this basis of federal jurisdiction fails.

In *Howey*, the Supreme Court enunciated the test to be applied in determining whether a financial arrangement is an investment contract and hence a security within the securities acts:

> The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.

328 U.S. at 301, 66 S.Ct. at 1104. In *United Housing*, the Court faced the problem of whether the holders of "stock" in a co-operative housing project were holders of securities within the meaning of the 1933 and 1934 Acts, which defined "security" to include "any stock." The Court stated, *inter alia* :

> [T]he basic test for distinguishing the transaction from other commercial dealings is [the *Howey* test]. This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

421 U.S. at 852, 95 S.Ct. at 2060. The Court expressly rejected the notion that just because the transaction involved was evidenced by shares called "stock" it must be within the statute under the "any stock" language. 421 U.S. at 848, 95 S.Ct. at 2051. Citing its earlier decision in *Tcherepnin v. Knight, supra*, the Court observed (1) that the Securities Acts were promulgated to eliminate abuses in the previously unregulated securities market, (2) that the focus of

the Acts is on (a) the capital markets of the free enterprise system—the sale of securities to raise capital for profit-making purposes—and (b) the prevention of fraud and the protection of investors, and held (3) that Congress intended the application of the Acts to turn on the "economic realities" of the underlying transactions.

Upon analyzing the economic realities in the case, the Court in *United Housing* held that the transaction was not within the purview of the Securities Acts. The shares purchased by the plaintiffs did not "represent any of the 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits,' *Howey*, 328 U.S. at 299, 66 S.Ct. at 1103, and therefore [did] not fall within 'the ordinary concept of a security.' " [4] 421 U.S. at 848, 95 S.Ct. at 2058. Rather, the case before the Court was a consumer transaction, motivated by a "desire to use or consume the item purchased"; in such cases "the securities laws do not apply." 421 U.S. at 853, 95 S.Ct. at 2060. The co-op purchasers sought to obtain decent homes at attractive prices, an economic interest which characterizes every form of commercial dealing. "What distinguishes a security transaction—and what is absent here—is an investment where one parts with his money in the hope of receiving profits from the efforts of others, and not where he purchases a commodity for personal consumption or living quarters for personal use." 421 U.S. at 858, 95 S.Ct. 2063.

In reaching this conclusion, the Court in *United Housing* analyzed the facts according to the *Howey* test. The "investors" were attracted "solely by the prospect of acquiring a place to live, and not by financial returns on their investments." 421 U.S. at 853, 95 S.Ct. at 2061. Nor was "the prospect of profits resulting from the efforts of the promoters or third parties" the inducement for investment by the co-op

---

**4.** The "ordinary concept of a security" language derives from H.R. No. 85, 73d Cong., 1st Sess. (1933) at 11. The Court in *United Housing* observed that Congress used the broad definition "any stock"—and ostensibly, "any note"

—" 'so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.' [Id.]" 421 U.S. at 847–48, 95 S.Ct. at 2058.

buyers. 421 U.S. at 854, 95 S.Ct. 2061.[5] "[T]he purchasers were interested in acquiring housing rather than making an investment for profit." 421 U.S. at 860, 95 S.Ct. at 2064.

■ It is clear from the foregoing that not "any note" is a security and that a *Howey* analysis represents the proper inquiry in the present case; did the plaintiffs herein invest their money in a common enterprise, expecting profits from the efforts of others? One fact above all belies this possibility. Plaintiffs and defendant each owned stock in a common enterprise *prior* to the issuance of the note herein alleged to be a security. By the sale of their stock to the defendant in exchange for the latter's note, plaintiffs sought to *terminate* their investment. Unquestionably plaintiffs expected a profit—the interest on the note.[6] But equally undeniable is the fact that plaintiffs were not "investing" in any sense of the word. They were seeking to take their money *out of* the common enterprise. To construe this transaction as an investment for profit on the part of the plaintiffs, within the meaning of *Howey,* would be absurd. The instant facts suggest a commercial—as distinguished from an investment—transaction; on these facts plaintiffs did nothing more than sell a commodity on credit. *See Lino v. City Investing Co.,* 487 F.2d 689, 695 (3d Cir. 1973). Plaintiffs did not seek to invest; defendant did not seek to induce an investment. *See CNS Enterprises, Inc. v. G & G Enterprises, Inc., supra.* Plaintiffs' own version of the facts demonstrates that the inducement for this transaction was the settlement of a lawsuit and the termination, rather than the continuance or creation, of a common enterprise for profit. Accordingly, this court holds that the note involved herein is not a security within the meaning of the Securities Act

of 1933 and jurisdiction under that Act may not be premised thereon.

**B.**

■ The instant note failing to be a security, the court must address the second ground of 1933 Act jurisdiction: can the plaintiffs, as *sellers* of securities (the corporate stock which was the subject of this transaction) maintain an action under Section 17 of that Act? Although the Fourth Circuit has apparently not ruled on this point, the law is clear in the other circuits that Section 17 creates a private cause of action in purchasers only. *Schoenbaum v. Firstbrook,* 268 F.Supp. 385 (S.D.N.Y.1967), *aff'd,* 405 F.2d 200 (2d Cir.), *rev'd on other grounds,* 405 F.2d 215 (2d Cir. 1968) (*en banc*), *cert. denied, Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Davidge v. White,* 377 F.Supp. 1084 (S.D.N.Y.1974); *In re Penn Central Securities Litigation,* 357 F.Supp. 869 (E.D.Pa. 1973), *modifying on these grounds,* 347 F.Supp. 1327 (E.D.Pa.1972), *aff'd,* 494 F.2d 528 (3d Cir. 1974); *Crowell v. Pittsburgh & Lake Erie RR. Co.,* 373 F.Supp. 1303 (E.D. Pa.1974). *See Simmons v. Wolfson,* 428 F.2d 455 (6th Cir. 1970), *cert. denied,* 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir. 1967). *See generally* 3 Loss, Securities Regulation 1784–91 (2d ed. 1961, Supp.1969). This court is convinced that the Fourth Circuit would follow this rule and accordingly holds that jurisdiction under Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, is lacking; Count I of the complaint will therefore be dismissed.

**II.**

Count II of the complaint asserts a cause of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

---

**5.** It should be noted in conjunction with this profit discussion that the Court adhered strictly to a traditional notion of profits and rejected three types of profit divined by the court of appeals to be present in the transaction. 421 U.S. at 854–57, 95 S.Ct. 2051. *See also id.* at 852, 95 S.Ct. 2051.

**6.** Whether this profit is within the *Howey* test is subject to some question, however. *See* note 5 *supra.*

§ 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, thereunder.[7] Defendant moves to dismiss on what this court perceives as three grounds and they will be considered in the order presented by defendant's motion.

### A.

Defendant's first ground is that an action under Section 10(b) and Rule 10b–5 "normally may not be founded upon a theory of breach of contract." Unfortunately for the defendant the case he cites in support of this proposition, *Keers and Company v. American Steel Pump Corp.,* 234 F.Supp. 201 (S.D.N.Y.1964), has been overruled *sub silentio* by *Opper v. Hancock Securities Corp.,* 367 F.2d 157 (2d Cir. 1966). *See Commerce Reporting Company v. Puretec, Inc.,* 290 F.Supp. 715, 718 (S.D.N.Y.1968).

■ The proper approach to the instant problem is that applied by the court in *A.T. Brod & Co. v. Perlow,* 375 F.2d 393 (2d Cir. 1967), and *Commerce Reporting Company v. Puretec, Inc., supra.* The breach of contract allegation fulfills the requirement of Section 10(b) that the fraudulent practice be "in connection with the purchase or sale of any security." *Id.* at 718–19. Proper allegations of fraud then bring what would in their absence be a common law breach of contract action into the purview of Section 10(b). If the breach and the fraud are proven, plaintiffs may be entitled to a recovery under Section 10(b). But the plaintiffs are "not required to *prove* in [their] complaint that [they are] entitled to an ultimate recovery." *A.T. Brod & Co. v. Perlow, supra,* at 398. The present motion

seeks dismissal for failure to state a claim, not summary judgment. The proper inquiry, therefore, is not whether plaintiff *has* proved the allegations in his complaint, but whether, if he does, he will be entitled to relief.

■ It is the opinion of this court that Count II of the complaint does state a claim upon which relief can be granted. The plaintiffs allege that defendant entered into the instant contract with the intent of never performing. There was thus a material misrepresentation in connection with the purchase or sale of a security. This court agrees with the Second Circuit that this is a sufficient allegation of fraud to bring this action within the purview of Section 10(b) and Rule 10b–5. *A.T. Brod & Co. v. Perlow, supra.* If the proof should fail, that is another matter.

### B.

■ Defendant next argues that even if the allegations of the complaint state a cause of action in the abstract, they fail to do so in this case because they are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Plaintiffs' response to the argument that they have failed to plead fraud with the particularity required by Rule 9(b) has certain analytical difficulties. Plaintiffs ar-

---

**7.** Section 10(b) provides:

It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of

the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

gue, and correctly so, that the elements of common law and securities act fraud are different; the proof of fraud under Section 10(b) is less stringent. *E. g., Baumel v. Rosen,* 283 F.Supp. 128, 140 (D.Md.1968), *aff'd in part, rev'd in part,* 412 F.2d 571 (4th Cir. 1969). Plaintiffs then argue that, the proof being different, the pleading must be different; they need only allege the elements of Section 10(b) fraud and not common law fraud, and this they have done.

Plaintiffs seemingly misconceive the thrust of the defendant's argument. Defendant does not argue, as plaintiffs seem to assume, that one must plead common law fraud to state a cause of action under the Securities Acts' antifraud provisions; defendant's argument is merely that *whatever* the elements are of Securities Act fraud, that fraud must be pleaded in accordance with Rule 9(b) and plaintiffs simply have not pleaded with the requisite particularity.

The heart of the dispute, then, is whether Rule 9(b) applies to Securities Act fraud, and if so, whether the Rule's requirements are here met. In this court's view, plaintiffs have satisfied the requirements of Rule 9(b) and thus the issue of whether the rule applies need not be reached.

### C.

Paragraphs eight through eleven of the complaint, incorporated by reference into Count II, allege sufficiently specific facts to put the defendant on notice of what the plaintiffs charge he did and the misrepresentations and omissions by which he did it. Two omissions and two misrepresentations are specifically offered. The allegations suggest a fraudulent scheme, which, if proven, could render the defendant liable. *Segal v. Gordon,* 467 F.2d 602 (2d Cir. 1972), relied on by the defendant, is distinguishable. The complaint in that case was clearly insufficient; it did no more than allege the statute. While plaintiffs in the present case spend a good deal of their complaint simply alleging the statute, enough particular facts are given to withstand the requirements of Rule 9(b).

Rule 9(b) must be read in conjunction with Rule 8 which contains the provisions creating the "notice" pleading which is the hallmark of the federal rules. Rule 9(b) requires more than mere notice in cases of fraud; nevertheless, it is not to be construed and applied in a vacuum devoid of Rule 8's existence. *Tomera v. Galt,* 511 F.2d 504 (7th Cir. 1975); Wright & Miller, Federal Practice & Procedure: Civil § 1298.

Rule 9(b) requires particularity in the pleading of the "circumstances" of the fraud; that is, the rule requires presentation of the situation out of which the claim arose. The circumstances giving rise to the instant allegations are quite specifically pleaded: a contract for the sale of securities was signed but never consummated; plaintiffs were induced to sign the contract in settlement of a lawsuit then existing between the parties by the misleading omissions and misrepresentations of the defendant. The agreement is in the record as an exhibit to the complaint. Specific omissions and misrepresentations are alleged.[8] *See* Complaint ¶ 11. Rule 9(b) is satisfied and the motion is denied as to Count II.[9]

### III.

The issue is also raised as to whether defendant's common law fraud count (Count III) complies with the requirements of Rule 9. Suffice it to say that the holding of this court is the same as in Section II. C., *supra;* the motion is denied as to this contention. *See* Complaint ¶¶ 8–11; Wright & Miller, Federal Practice & Procedure: Civil § 1298.

### IV.

Among the relief sought by plaintiffs is specific performance of the contract.

---

**8.** For example, plaintiffs allege that defendant omitted to state that he lacked the financial resources to complete the sale and that defendant affirmatively misrepresented his intention to complete the sale.

**9.** Defendant also raises the issue of materiality as respects one of the alleged misrepresentations. This contention may or may not be meritorious, but it is inappropriate in the context of a motion to dismiss.

Defendant argues that specific performance is an equitable remedy, that plaintiffs have an adequate remedy at law in the form of damages, and that plaintiffs therefore have no right to equitable relief.

As plaintiffs correctly observe, *Annotated Code of Maryland,* Art. 16 § 169, specifically changes the common law requirement that one not have an adequate remedy in damages for specific performance to be granted. It seems clear from the allegations in the complaint that with proper proof plaintiffs may be entitled to specific performance. *Teschner v. Falkenwalde,* 135 Md. 114, 108 A. 467 (1919).[10] The motion is denied as to this contention.

### V.

Defendant next urges that the complaint fails to support its claim for punitive damages by failing to allege malice, which Maryland requires be proved to support a punitive damage recovery. *See Daugherty v. Kessler,* 264 Md. 281, 286 A.2d 95, 97 (1972). Plaintiffs correctly note that under Rule 9(b) malice need only be averred generally and that paragraph twenty-six of the complaint makes the necessary averment. This court cannot say that plaintiffs will be able to prove no set of facts to support a punitive damage recovery; the motion is denied as to this point.

### VI.

Defendant argues that the court cannot order the contract whose breach is in question to be specifically performed without the joinder of the corporation whose stock was to be transferred ("Olbo"). As plaintiffs note, Olbo is not a signatory to this contract. The obligations contained therein fall on the parties to this case and not on the corporation. The only real prob-

lem is the effect of a grant of specific performance on the clause of the contract wherein defendant agrees to execute a release of plaintiffs on behalf of Olbo Corporation. The problem disappears when one considers that whether Olbo is a party or not is irrelevant to the effect of this clause. Whether Olbo is a party or not, the legal effect of enforcing this clause depends on whether the defendant stands in such a relation to Olbo that he has the power to bind the corporation. Relief is sought only against the defendant. If he is ordered to perform the contract, the legal effect of executing a release on behalf of Olbo will depend solely on the defendant's authority to contract on behalf of Olbo. The question is one of agency and the answer is unaffected by whether Olbo is a party to the present proceeding. For the record, however, it should be noted that if this court does ultimately grant specific performance, such relief will *not* include a determination as to whether defendant had, has, or will have the authority to bind Olbo Corporation. Defendant would merely be ordered to perform those obligations incumbent upon him in his individual capacity[11] as a consequence of his being a party to the instant contract. In sum, it does not appear to the court that in Olbo's absence:

(1) . . . complete relief cannot be accorded among those already parties, or (2) [that Olbo] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [its] claimed interest.

**10.** Neither party urges that this issue is controlled by other than Maryland law and this court will not address this point. The parties do discuss whether security sales are a special instance wherein the right to equitable relief does not depend on the availability of an adequate remedy at law; but, in view of this court's holding as to specific performance, it is unnecessary to reach this issue.

**11.** Defendant also signed the contract in his capacity as executor of the Estate of Martin V. B. Bostetter, Sr., but no issues are currently raised as to the effect this court's judgment may have on him in this capacity. The court reserves any ruling on this point, and the statement in the text is subject hereto.

F.R.Civ.P. Rule 19(a). Olbo will not be ordered joined.

## VII.

Since Count II creating federal jurisdiction under the Securities Exchange Act of 1934 has been kept in the complaint, and since Olbo, whose joinder would allegedly defeat diversity, has not been joined, jurisdiction over the state law claims exists both as a matter of pendent jurisdiction, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and as a matter of diversity jurisdiction, 28 U.S.C. § 1332.

## VIII.

A more definite statement appears unnecessary in this case (and perhaps in any case satisfying Rule 9(b)). Defendant has ample notice of that against which he must defend.

Accordingly, it is this 14th day of February, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion to dismiss be, and the same hereby is, GRANTED as to Count I of the Complaint;

2. That said motion be, and the same hereby is, DENIED in all other respects.